**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

TIMOTHY P. MANGES,          )
                            )
Petitioner,                 )
                            )
vs.                         )    CAUSE NO. 3:11-CV-085
                            )
SUPERINTENDENT,             )
                            )
Respondent.                 )

## OPINION AND ORDER

This matter is before the Court on the Petition under 28 U.S.C. Paragraph 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Timothy P. Manges, a *pro se* prisoner, on March 3, 2011. For the reasons set forth below, the Court **DENIES** the petition for writ of habeas corpus (DE #1); **DENIES** a certificate of appealability; and **DIRECTS** the Clerk to close this case.

BACKGROUND

Timothy P. Manges filed this habeas corpus petition challenging his conviction and fifty year sentence for Child Molesting by the Elkhart Superior Court under cause number 20D03-0012-CF-186. During the initial round of briefing, the Respondent argued that the petition should be dismissed as untimely. Because the petition is timely, that request was denied and the Respondent

was ordered to respond to the six grounds raised by Manges in the habeas corpus petition. This case is now fully briefed.

In deciding a habeas petition, the Court must presume the facts set forth by the State courts are correct unless the Petitioner presents clear and convincing evidence rebutting that presumption. 28 U.S.C. § 2254(e)(1). The Court of Appeals of Indiana set forth the basic facts in its opinion on direct appeal.

A.M. was Joy Manges' oldest child, who was born on July 22, 1987. Joy and Timothy Manges were married in 1994 and had two children, M.M. and T.M. They were divorced in 2000 with one of the reasons being that Manges and A.M. did not get along. During the marriage, Joy saw Manges doing what she thought were inappropriate things with A.M., such as taking baths with her and lying in bed with her while naked. Joy told Manges on numerous occasions to stop these activities. Joy also wondered if Manges had touched A.M., but she thought he was not capable of it. After the divorce, Joy lived in Goshen and maintained a friendly relationship with Manges.

Manges contacted Joy about spending the night at her house in order to see his children perform at a church program the next morning, and then take them on visitation. Manges' request to spend the night was not unusual. After arriving, Manges watched a movie with Joy and A.M. in Joy's bedroom. When the movie was over Manges was to spend the night in his children's bedroom. Joy went to sleep watching the movie. After the movie was over, A.M. was not feeling well and went to bed in her bedroom. Manges gave her Tylenol for her headache. Manges then pulled A.M. off the bed and rubbed his penis against her. Joy by then had awakened and noticed that Manges and A.M. were not there. Joy went to check on A.M. and found her in her bedroom with the lights turned off. Joy turned the lights on and saw A.M. bending over the bed with her feet on the floor and Manges standing right behind her. Manges pushed A.M. onto the bed and quickly set down in a chair. Joy told Manges to stand up. At first he refused, but then did stand up. His penis was partially erect. Manges left the room, and Joy spoke with A.M. who was defensive. Joy then spoke with Manges. He admitted that over a period of a couple of years he had been

2

rubbing A.M., and that he had touched her breast and vagina.

Joy contacted the police. A.M. told them that in 1999 Manges had put his mouth on her vagina. Detective Mackowiak took Manges' statement after giving him the Miranda warning. Manges said he had been touching A.M. in an inappropriate manner for a year and a half, that he had performed oral sex on her, and he had placed his finger in her vagina.

Manges acted as his own attorney before, during, and after the trial.

*Manges v. State*, 20A05-0504-CR-181 (Ind. Ct. App. January 24, 2007). (DE #17-3 at 4-5.)


DISCUSSION

The Respondent begins by renewing his assertion that the petition is untimely. As previously explained (DE #13), pursuant to *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009), the petition is timely.

Ground One: Prosecutorial Statements to Witnesses

Manges argues that he was denied due process "when the State failed to inform and concealed from Petitioner's jury any promises and/or threats made to State's witnesses directly regarding their testimony at trial and denied Petitioner the ability to inform the jury of the promises and/or threats in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution." (DE #1 at 3.) Manges further asserts that "the State knowingly solicited false and misleading testimony from Joy Manges (Jaquez) regarding her willingness to testify for the State . . .

3

." (*Id.*) In his direct appeal, Manges raised these issues as separate grounds:

A.   Was Manges denied Due Process of Law when counsel for the State concealed from the jury that the State had threatened State's witnesses with prosecution?

B.   Was Manges denied Due Process of Law when counsel for the State intentionally solicited false and misleading testimony from State's witness?

*Manges v. State*, 20A05-0504-CR-181 (Ind. Ct. App. January 24, 2007). (DE #17-3 at 3.) Though Manges has briefed them as a single issue in this Court and the Court of Appeals of Indiana addressed them as a single issue, because of the need to analyze them separately in this opinion, the Court will refer to them as sub-issue A and sub-issue B.

The Respondent asserts that Ground One is procedurally defaulted because the Court of Appeals of Indiana dismissed these claims for independent and adequate state law reasons.

A state is entitled to treat as forfeited a proposition that was not presented in the right court, in the right way, and at the right time – as state rules define those courts, ways, and times. Failure to comply with the state's procedural rules furnishes an independent and adequate state ground of decision that blocks federal collateral review.

*Szabo v. Walls*, 313 F.3d 392, 395 (7th Cir. 2002) (citations omitted).

A state law ground is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case. A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied.

4

*Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012) (quotation marks and citations omitted).

Manges acknowledges that the State court "relied on three separate procedural defaults in its decision on" (DE #30-1 at 4) the issues he now presents in Ground One. However, he asserts that two of those reasons are "employed infrequently, unexpectedly, or freakishly." *Id.* Specifically, he complains that the Indiana appellate courts do not consistently require "cogent reasoning," *see* Indiana Appellate Rule 46(A)(8)(a), or "a concise statement of the applicable standard of review," *see* Indiana Appellate Rule 46(A)(8)(b). In support of his argument, he attaches a list of 29 Indiana cases that he purports demonstrate that these requirements "are waived in about 80% of civil cases but only about 50% of criminal cases." (DE #30-1 at 4.) Though it is unclear whether this survey is accurate or representative of Indiana cases, a rule is not inadequate merely because it is discretionary, *Beard v. Kindler*, 130 S. Ct. 612, 618 (2009), or "frequently ignored" *White v. Peters*, 990 F.2d 338, 340 n.1 (7th Cir. 1993) ("It may well be that this rule is frequently ignored, [b]ut White has not argued any persuasive, specific facts to negate the conclusion that the rule is 'solidly established.'").

> [A] rule need not be followed strictly in order for it to constitute an adequate ground for the state court's decision. A state ground that is solidly established will be respected even though not strictly followed. Whatever inconsistencies there may be in the Illinois courts' application of the rule, invocation of the rule as a

5

procedural bar could hardly be described as surprising .
. . .

*Miranda v. Leibach*, 394 F.3d 984, 995 (7th Cir. 2005) (citation, parentheses, and quotation marks omitted). So too here. A litigant, even a *pro se* litigant, cannot plausibly assert that it is a surprise that he would be required to present "the applicable standard of review" with "cogent reasoning" in his appellate brief. Therefore, along with the requirement to contemporaneously object to prosecutorial misconduct (which Manges did not contest) – all three of the reasons identified by the Court of Appeals of Indiana for dismissing the claims raised in Ground One are independent and adequate State law reasons for procedural default.

Turning then to the applicability of these three reasons, Manges argues, in regard to sub-issue A:

> there appears to be no standard of review as to a claim
> that the State failed to disclose to a jury any "evidence
> of any understanding or agreement as to a future
> prosecution." *Crivens v. Roth*, 172 F.3d 991, 998 (7th
> Cir. 1999) (citation omitted). The reviewing court is to
> determine from the record if an agreement or
> understanding factually existed, *Lott v. State*, 690
> N.E.2d 204 (Ind. 1997); see also *Rubalcada v. State*, 731
> N.E.2d 1015 (Ind. 2000) (The prosecutor's duty of
> disclosure arises when there is a confirmed promise of
> leniency in exchange for testimony), which the COA
> refused to do.

(DE #30-1 at 4-5) (footnote omitted, underline added). This argument is wholly unpersuasive. Clearly there are legal standards for such claims – Manges cites to three in this paragraph alone. Though there are others, this is sufficient to reject his argument

6

that it was impossible to have complied with the State rule. Manges also argues that it was impossible for him to have objected to the prosecutor's failure to disclose the promises and threats made to the witnesses. Even if true, the other two adequate and independent grounds for procedural default are sufficient to find that sub-issue A is procedurally defaulted.

Manges argues that "[s]ince the State clearly understood Petitioner's claim, the argument was not so poor as to impede the COA's consideration of the error." (DE #30-1 at 5) (citations omitted). He also argues that his appellate brief "was entitled to a more liberal construction" because he was proceeding *pro se*. (*Id.*) However, "[a] federal court reviewing a habeas petition is required to respect a state court's finding, under state law, of waiver or procedural default [because] Federal courts do not sit to correct error made by state courts in the interpretation and application of state law." *Bobo v. Kolb*, 969 F.2d 391, 399 (7th Cir. 1992) (quotation marks and citations omitted).

Because Ground One is procedurally defaulted and none of the arguments presented by Manges provide a basis for excusing this default, the Court cannot grant habeas corpus relief based on Ground One.

### Ground Two: Cross-Examination of Witness

Manges argues that he was denied "the ability to fully and effectively cross-examine State's witness . . . when the trial

court sustained the State's objection that witness intimidation and prosecutorial misconduct towards State's witnesses had nothing to do with Petitioner's trial." (DE #1 at 3.) The witness in question was his ex-wife, the mother of the child he molested. This claim was presented to, and adjudicated by, the Court of Appeals of Indiana. It ruled that "[t]rial judges have wide latitude to impose reasonable limits based on concerns including harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Manges v. State*, 20A05-0504-CR-181 (Ind. Ct. App. January 24, 2007) (DE #17-3 at 12). It concluded by holding that, "[t]he trial court placed reasonable limitations on Manges as they applied to prejudice, confusion, or interrogationas [sic] to issues that are marginally relevant. There is no abuse of discretion. (*Id.*) (DE #17-3 at 13) (citation omitted).

Pursuant to 28 U.S.C. § 2254(d), when a case is adjudicated on the merits in a state court proceeding, a writ of habeas corpus can only be granted if the state court's decision resulted from either: (1) an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, or (2) an unreasonable determination of the facts in light of the evidence presented at trial. Manges does not challenge the factual determinations. Rather, he argues that cutting off his questioning of the victim's mother about her motivations for testifying was an

unreasonable application of *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) which held that "cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated respondent's rights secured by the Confrontation Clause." Manges also cites to *Olden v. Kentucky*, 488 U.S. 227, 231 (1988) and *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974).

However, Manges did not have all questioning cut off. Over the objection of the prosecutor, he introduced an exhibit (signed by his ex-wife) which described the prosecutor's interaction with her as follows:

### PROSECUTOR INTIMIDATION

On February 21st, 2001, I sent a letter to the court asking the prosecutor and the court to give Tim probation, as there was a plea bargain hearing coming, and I was afraid they would send him to jail for a long time instead.

I did not want our family broken up over this, and said so in the letter.

On the day of the hearing, February 23rd, I approached the prosecutor in the hallway outside the courtroom, before the hearing inquiring if he had received my letter.

During our conversation, in an intimidating tone, he confronted me about the letter by asking me "Whose side are you on, anyway?"

Clearly he was angry about the letter. I felt very frightened and intimidated.

He also asked why I was sitting with Tim, and I told him it was to support him. He was unhappy about that as well.

I was quite upset when I reentered the courtroom.

I am very fearful of this prosecutor.

I feel he wants to break up this family, just to win a case.

(Defendant's Trial Exhibit A.) Using that exhibit, Manges then asked her a series of questions, including:

Q    During your confrontation with Mr. Hill outside the courtroom on February 23rd, did he frighten or intimidate you?

A    Yes.

Q    Could you elaborate on how he did this, or what took place?

A    I had asked him if he had received a letter that I had written to him trying to put this back together, or trying to put the family back together. And he had told me – he was very firm and had told me that – that there was no way that it was going to do any good, that you had done what you had done. And that almost – because of the letter that I was almost – because I was trying to put the family back together, that I was almost as guilty in not considering [A.M.] in the situation, that I was almost as guilty as you. And – and that's not – and yeah, that – that scared me. That – that really did. 'Cause there's no way that I can do what you did.

(Trial Record at 297-98.) In addition, he also elicited the following information about her motivation for testifying.

Q    Okay. You stated that I asked for help.

A    Yes.

Q    Did I ask for any kind of help in particular?

A    You asked for counseling together. You asked for help.

10

Q    Okay.

A    You asked for counseling. It was more than I could handle.

Q    Okay. And did you feel that the police were more than adequate to do that?

A    At least to guide you in the right way. Yes.

Q    Okay. At any point in time, did – did I actually acquire counseling?

A    Yes.

Q    Okay. And since the – the night of the 16th, have you seen any change?

A    In what?

Q    In myself. Due to this counseling.

A    In anger control, yes. As for admitting to your guilt, you still evade the – the guilt. You still – Tim, you're trying so hard to prove that they did something wrong to you, but look at what brought us here. You did something to [A.M.] you shouldn't have done. That's what brought us here. And no matter what they have done to you, does not take away the fact that you touched [A.M.], and you did something very wrong. And to put her on the stand and put her through this is unbelievable. And what you've done to your parents. I mean, you can strike my statement if you want to, but you know what has brought us here.

THE COURT: Ma'am.

THE WITNESS: Is what you have done.

(Trial Record at 306-07.)

In *Olden v. Kentucky*, 488 U.S. 227, 231 (1988), the United States Supreme Court explained that the right to confront and cross-examine a witness is "subject to the broad discretion of a

11

trial judge . . . ." Manges disagrees with how the trial judge exercised that discretion here. He disagrees with the Court of Appeals of Indiana's holding that it was not an abuse of discretion to have cut off further questioning. Though other trial judges might have let him proceed further, that is not the question before this court. The test here is whether the State appellate court's ruling was an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). "In order for a federal court to find a state court's application of [United States Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-521 (2003) (citations omitted). Here, it was not. Manges was not denied every opportunity to cross-examine his ex-wife about her interactions with the prosecutor. He was not denied any chance to present the jury with impeachment evidence about her motivations for testifying about the molestation of her daughter. Certainly, reasonable jurists could debate whether Manges should have been permitted additional questions on this subject. But it was not objectively unreasonable for the Court of Appeals of Indiana to have found that it was not an abuse of discretion to have allowed him to go only this far, and no further. Thus Ground Two presents no basis for habeas corpus relief.

12

<u>Ground Three: Failure to Record Custodial Interrogation</u>

In his petition, Manges argues that he was denied due process by "the failure to record his custodial interrogation by the improperly shifting the burden from the State to the Petitioner to prove statement was voluntary . . . ." (DE #1 at 4.) In his petition, he makes no mention of whether the interviewing officer acted in bad faith. Nevertheless, in his traverse, he argues that, "[t]he claim is NOT that the interview was required to be recorded but that the record evinces that Detective Mackowiak acted in bad faith when he purposely did not record the custodial interview of Petitioner." (DE #30-1 at 11.) Under either theory, Ground Three presents no basis for habeas corpus relief.

Manges suggests that this Court conduct a *de novo* review of this claim because the Court of Appeals of Indiana made no mention of federal law in resolving this issue. However, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits." *Harrington v. Richter*, 562 U.S. __, __; 131 S. Ct. 770, 784 (2011). This is true whether the State court summarily rejects every claim or is merely silent as to a federal claim. *Johnson v. Williams*, 568 U.S. __, __; 133 S. Ct. 1088, 1091 (2013). Therefore, habeas corpus relief is only available if the State's denial of this claim was an unreasonable application of

13

clearly established United States Supreme Court law. 28 U.S.C. §
2254(d)(1).

However, Manges does not cite to any United States Supreme
Court case that requires the recording of custodial interrogations
– and this Court knows of no such case. There being no clearly
established United States Supreme Court law on the subject, it is
impossible to say that the State court did not properly apply that
law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because
our cases give no clear answer to the question presented . . . it
cannot be said that the state court unreasonably applied clearly
established Federal law.") (quotation marks, brackets, and citation
omitted).

His argument that the failure to record was done in bad faith
fares no better. He argues that,

> Definitions of "bad faith" in the handling of evidence
> include "<u>destruction</u> for the purpose of <u>hiding</u> adverse
> information," *Trask-Morton v. Motel 6 Operating L.P.*, 536
> F3d 672, 681 (7th Cir. 2008), and a "conscious effort to
> <u>suppress</u> exculpatory evidence," *United States v.*
> *Chaparro-Alcantara*, 226 F.3d 616, 624 (7th Cir. 2000).
> "The Supreme Court in *Youngblood* said that 'the presence
> or absence of bad faith by the police for purposes of the
> Due Process Clause must necessarily turn on the police's
> knowledge of the exculpatory value of the evidence at the
> time it was <u>lost or destroyed</u>.'" *Id.* (citation omitted).

(DE #30-1 at 11-12) (underlines added). Here, there was no evidence
that was destroyed, hidden, suppressed, or lost. There was no
custodial interview recording to destroy, hide, suppress, or lose.
Moreover, knowledge of what happened during the interview was not

kept from Manges because he was there – he was the one being interviewed. The failure to record the interview did not conceal any evidence from him. Nor did it shift the State's burden to prove the voluntariness of his confession. *See United States v. Stewart*, 536 F.3d 714, 719 (7th Cir. 2008) ("The government bears the burden of demonstrating the admissibility of a confession.") Therefore Ground Three presents no basis for habeas corpus relief.

<u>Ground Four: Adequacy of the Charging Information</u>

Manges argues that he was denied due process because "the Charging Information did not contain all the elements necessary to constitute a violation of any criminal statute under Indiana law . . . ." (DE #1 at 4.) The Respondent argues that this claim is procedurally defaulted.

Manges raised this claim during his direct appeal (DE #17-9 at 45-47), but he did not include it in his petition to transfer to the Indiana Supreme Court. (*See* DE #17-12 at 4.) Thus, he did not exhaust this claim on direct appeal.

> Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, *see* 28 U.S.C. § 2254(b)(1)(A), is the duty to fairly present his federal claims to the state courts. *Baldwin v. Reese*, 541 U.S. 27 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). "Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in the federal habeas proceeding does it make sense to speak of the exhaustion of state remedies." *Id.* at 276. Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings. *Boerckel*,

15

526 U.S. at 845. This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory. *Ibid.*

*Lewis v. Sternes*, 390 F.3d 1019, 1025-1026 (7th Cir. 2004) (parallel citations omitted).

Though Manges raised this claim again during his post-conviction relief proceedings (DE #17-13 at 4), the Court of Appeals of Indiana refused to consider it because it was barred by *res judicata. Manges v. State*, 20A05-1003-PC-186 (Ind. Ct. App. September 16, 2010) (DE #17-5 at 7) ("[B]ecause Manges already raised the issue on direct appeal, based on the doctrine of *res judicata*, the post-conviction court did not err when it denied his petition."). Manges does not argue that this is not an independent and adequate State law reason for dismissing this claim, nor does he provide a basis for excusing this default, therefore the Court cannot grant habeas corpus relief based on Ground Four. *See Szabo v. Walls*, 313 F.3d 392, 395 (7th Cir. 2002).

### Ground Five: Prosecutorial Comments

Manges argues that the prosecutor made "repeated and numerous improper statements directed at Petitioner's exercising his Constitutional rights . . . ." (DE #1 at 5.) In addressing this issue, the Court of Appeals of Indiana identified four subparts: (A) the State improperly commented on his right to remain silent, *Manges v. State*, 20A05-0504-CR-181 (Ind. Ct. App. January 24, 2007) (DE #17-3 at 7); (B) "the State improperly commented on the burden

16

of proof and the presumption of innocence during voir dire and closing argument," *Id.* at 8; (C) "the State improperly vouched for the credibility of the State's witnesses," *Id.*; and (D) "the State improperly vouched for the State's case, evidence, and the State itself." *Id.* at 9. The State court found that the last three sub-issues (B, C, and D) were waived because Manges did not make a contemporaneous objection during trial and did not present a cogent argument on appeal. The Respondent argues that these three sub-issues are procedurally defaulted. It does not appear that Manges specifically responded to the procedural default of these three sub-issues in Ground Five. However, to the extent that his response was included in Ground One, these three sub-issues are procedurally defaulted for the reasons previously explained in this Court's opinion on Ground One.

As to sub-issue A, Manges argues that, "[t]he State of Indiana directly commented on Petitioner's not testifying at trial to the jury by the repeated use of 'uncontroverted' during closing argument." (DE #1 at 5.) The Court of Appeals of Indiana addressed this part of the claim on the merits:

> Comment on the lack of evidence by the defense concerning otherwise incriminating evidence against him is proper as long as the State focuses on the absence of any evidence to contradict the State's evidence and not on the accused's failure to testify. *Channell*, 658 N.E.2d at 932. In the present case, Manges stated in his closing argument that there was reasonable doubt about his guilt. In response on rebuttal, the State argued that there was no reasonable doubt regarding Manges' guilt because of the uncontroverted nature of the State's evidence.

17

*Manges v. State*, 20A05-0504-CR-181 (Ind. Ct. App. January 24, 2007) (DE #17-3 at 8).

The argument presented in sub-issue A is the same claim that was raised and rejected in *Yancey v. Gilmore*, 113 F.3d 104 (7th Cir. 1997). As *Yancy* clarifies, the prosecutor's comments during closing argument were an indirect comment, not a direct comment about the fact that Manges did not testify. The prosecutor said that the evidence was uncontroverted, not that Manges did not testify. This is an important distinction because "[c]omments by the prosecutor on the state of the evidence that may indirectly refer to the defendant's silence . . . have not been the subject of direct Supreme Court guidance." *Yancey v. Gilmore*, 113 F.3d 104, 106-107 (7th Cir. 1997) (*quoting Freeman v. Lane*, 962 F.2d 1252, 1260 (7th Cir. 1992)). Because there is no clearly established United States Supreme Court law on this subject, it is impossible to say that the State court did not properly apply that law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented . . . it cannot be said that the state court unreasonably applied clearly established Federal law.") (quotation marks, brackets, and citation omitted). Therefore Ground Five is not a basis for habeas corpus relief because Manges has not offered any explanation to excuse his procedural default.

<u>Ground Six: Withdrawal of Plea Bargain</u>

18

Manges argues that the prosecutor punished him for firing his defense attorney and proceeding *pro se* by withdrawing an offer for a plea bargain. The Court of Appeals of Indiana denied this claim by noting that "[a] prosecutor is under no duty to plea bargain at all, or to keep an offer open, as the offer remains in the discretion of the prosecutor." *Manges v. State*, 20A05-0504-CR-181 (Ind. Ct. App. January 24, 2007) (DE #17-3 at 9). Manges argues that the State court's ruling was an unreasonable determination of the facts, but he does not say what fact the court unreasonably determined. Despite the Respondent's objection in this Court, (see DE #18 at 18 n.3), the Court of Appeals of Indiana found that the prosecutor had, "offered a plea agreement allowing Manges to plead to a lesser felony." *Manges v. State*, 20A05-0504-CR-181 (Ind. Ct. App. January 24, 2007) (DE #17-3 at 9). It further found that "[t]he State withdrew the offer after Manges fired his appointed counsel and proceeded *pro se*." *Id*. Manges does not explain what fact the State court found that was unreasonable. Neither has he explained how these facts are inconsistent with the argument he is presenting. Rather, he merely argues that it was wrong for the prosecutor to withdraw the plea offer after he fired his lawyer. This is an argument that the State court unreasonably applied the law, not the facts.

"There is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial."

*Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). Manges agrees, "there are no cases found with these precise circumstances . . . ." (DE #30-1 at 13.) That alone is enough to foreclose the possibility of habeas corpus relief. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008). Nevertheless, Manges argues that he had a Constitutional right to proceed *pro se* and that it was wrong for the prosecutor to have conditioned the plea offer on Manges' continuing to be represented by counsel.

The Prosecutor's authority to conditionalize the exercise of Constitutional rights in the context of a plea bargain is vast. *Corcoran v. Buss*, 551 F.3d 703, 711-12 (7th Cir. 2008). *Corcoran* held that it was permissible for a prosecutor to decide to seek the death penalty based on whether the defendant waived his right to a jury trial. *Corcoran* explained that "[a] defendant may waive many other fundamental protections along with the right to a jury trial, in the context of plea negotiations, such as . . . the right to counsel . . . ." *Corcoran v. Buss*, 551 F.3d 703, 711-12 (7th Cir. 2008). Based on *Corcoran*, it was not wrong for the prosecutor to have withdrawn the plea offer because Manges decided to represent himself.

Because the State court's rejection of this claim was not an unreasonable application of clearly established United States Supreme Court law, Ground Six presents no basis for habeas corpus relief.

20

<u>Certificate of Appealability</u>

As a final matter, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must consider whether to grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a certificate of appealability when the court dismisses a claim on procedural grounds, the petitioner must show that reasonable jurists would find it debatable (1) whether the court was correct in its procedural ruling and (2) whether the petition states a valid claim for denial of a constitutional right. *Id.*

Grounds One, Four, and Five (sub-issues B, C, and D) were dismissed for procedural reasons. For none of these grounds has Manges presented a valid justification to excuse his procedural default. Therefore reasonable jurists could not debate whether these claims should have been resolved in a different manner. Grounds Three, Five (sub-issue A), and Six, were dismissed on the merits. But for none of these grounds did Manges identify any clearly established federal law, as determined by the United States

21

Supreme Court, that was unreasonably applied. In the absence of any such law, reasonable jurists could not debate whether these claims should have been resolved in a different manner. Therefore a certificate of appealability will be denied as to Grounds One, Three, Four, Five, and Six.

Ground Two was dismissed on the merits and Manges identified *Olden v. Kentucky*, 488 U.S. 227, 231 (1988) as controlling the discretion afforded trial judges in cross-examining witnesses. Though reasonable jurists could debate whether the trial judge should have permitted additional questioning, that is not the question in this habeas corpus case. Though reasonable jurists could debate whether the appellate court should have found that not permitting additional questions was an abuse of discretion by the trial judge, that too is not the question in this habeas corpus case. The question here is whether reasonable jurists could debate whether it was unreasonable for the appellate court to have not found that it was an abuse of discretion for the trial judge to have not permitted additional questioning. The answer to this final question is no. Based on the facts of this claim, the discretion vested in the trial court, the deference given by appellate courts before finding an abuse of discretion, and the high level of deference required by 28 U.S.C. § 2254(d), it was not unreasonable for the Court of Appeals of Indiana to have affirmed the trial court's ruling – and reasonable jurists would not debate this

question. Therefore a certificate of appealability will be denied as to Ground Two.

CONCLUSION

For the reasons set forth above, the Court **DENIES** the petition for writ of habeas corpus (DE #1); **DENIES** a certificate of appealability; and **DIRECTS** the Clerk to close this case.

**DATED: November 8, 2012**          **/s/RUDY LOZANO, Judge**
                                     **United State District Court**